■ August Faustini, Respondent, v Michael J. Palladino, Appellant, et al., Defendants. [720 NYS2d 132] —Appeal from order, Supreme Court, Bronx County (Lottie Wilkins, J.), entered July 26, 1999, deemed to be, pursuant to CPLR 5501 (c), an appeal from judgment, same court (Yvonne Gonzalez, J.), entered November 9, 1999, which, to the extent appealed from as limited by the brief, granted plaintiff's motion for summary judgment on his foreclosure complaint and granted summary judgment dismissing the counterclaims, and so considered, said judgment, unanimously reversed, on the law, without costs, defendant's motion to vacate the grant of summary judgment to plaintiff granted, the action restored to the court calendar, and plaintiff's counsel disqualified pursuant to the Disciplinary Rules of the Code of Professional Responsibility. Appeal from the decision of the Supreme Court, Bronx County (Lottie Wilkins, J.), entered July 26, 1999, unanimously dismissed, without costs.

This is an action to foreclose on a mechanic's lien on real property. Plaintiff, a building contractor, is the father of defendants Teresa Palladino, Francesca LaGumina, and Giulio Faustini. Defendant John LaGumina is the husband of defendant Francesca LaGumina, and defendant Michael Palladino is the former husband of defendant Teresa Palladino. Defendant John LaGumina also is counsel for plaintiff.

Plaintiff asserts that he and defendants entered into an agreement dated January 3, 1994, whereby plaintiff agreed to build two two-family homes on Gunther Avenue in the Bronx, and defendants promised to repay him $900,000 for the construction costs. He claims that defendants asked for his assistance, and that he purchased the Gunther Avenue property and included defendants as co-owners on the deed, "it being understood by all that once they repaid me I would transfer the homes to the defendants." Plaintiff alleges that defendants told him they would apply for a mortgage for the purpose of repaying him. He claims that defendants Teresa Palladino and Michael Palladino said they would sell the home on Fish Avenue that they already owned subject to a mortgage in order to be in a position to apply for a mortgage on the new homes. Construction of the houses was completed on November 30, 1996.

In his affidavit dated September 8, 1998, in support of the

motion for summary judgment, plaintiff states that he still has not been paid and, "[t]o complicate matters, my daughter Teresa has since divorced her husband, defendant Michael Palladino. Thus, the mortgage that defendants had anticipated applying for became an impossibility as Michael Palladino refused to consent to a mortgage or even to a transfer of the property to me in lieu of a mortgage." So, on June 7, 1996, plaintiff filed the mechanic's lien and, since the lien remained unpaid, commenced the foreclosure action.

June 7, 1996, according to defendant Michael Palladino (Palladino), is the date on which his wife commenced the divorce action. He avers that "the property and house at issue were a gift to my then wife, plaintiff's daughter, defendant Teresa V. Palladino and myself. After my wife and I split up, we are now divorced, the gift suddenly became a loan and plaintiff commenced this lawsuit to get the houses and land back. Defendant, attorney John J. LaGumina is married to plaintiff's other daughter, Francesca M. LaGumina. * * * I am the only defendant who served an answer to the summons and complaint and the only one who served any opposition to the summary judgment motion." The record reflects that the other defendants filed notices of appearance and waivers of service of all papers. Palladino states that he never asked for plaintiff's assistance in purchasing the property and never agreed to repay plaintiff any costs or to sell his home, and that to his knowledge none of defendants did. He claims that plaintiff, at his own insistence, purchased the property, constructed homes on it, and gave defendants the property and homes, "so the family could be close to each other and to help us out." Palladino avers that, as a New York City police officer with a wife and three children and earning $50,000 a year, he never would have agreed to purchase or to obtain a mortgage on the Gunther Avenue property. He denies knowing about the construction contract, and asserts that, if he had known that he would be obligated to repay plaintiff, he never would have moved to Gunther Avenue, but would have stayed in his home and "within my means" on Fish Avenue. Palladino states that the property was always considered a gift until the day his wife divorced him and plaintiff filed the mechanic's lien.

Moreover, Palladino avers, in November of 1992, before he knew about the Gunther Avenue lots, he received a check for $107,000 as a gift from his wife's mother, Teresa Faustini, who told the couple to use the money to buy a house. The payor of the check was Teresa Faustini's father. Palladino deposited the check in a joint bank account with his wife. Plaintiff's daugh-

ter, Francesca LaGumina, and her husband, defendant John LaGumina, also received $107,000 from Teresa Faustini, as did plaintiff's son. When construction began on the Gunther Avenue houses in 1994, defendants contributed these funds, including the accrued interest, to the construction. Thus, Palladino argues, contrary to plaintiff's assertion that he has received nothing, plaintiff actually received approximately $330,000 toward the cost of the construction.

On the motion for summary judgment, plaintiff submitted copies of, *inter alia*, the contract in which his son and daughters agreed to pay him $900,000 for the satisfactory completion of the construction on those lots and the mechanic's lien for the construction costs. The date, June 3, 1994, is typed at the top of the contract, which states at the bottom, above the signatures of plaintiff and his children, "[The parties] have signed the contract as of the date written at the top." The witness to these signatures appears to be plaintiff's wife, and her signature is not dated. Palladino avers that he never knew of this construction contract, which Teresa Palladino allegedly signed while still married to him, thereby placing the two of them in significant debt. He states that the first time he saw the contract was when he received plaintiff's summary judgment papers in October 1998.

Palladino presented evidence in the admissible form of sworn affidavits showing the existence of material questions of fact on his defense that the property was a gift (*Zuckerman v City of New York*, 49 NY2d 557, 562). It also is apparent from the affidavits that discovery is needed (CPLR 3212 [f]). Palladino demonstrated a reasonable excuse, i.e., law office failure, for his default (CPLR 2005; *see, Deshler v East West Renovators*, 259 AD2d 351). Therefore, his motion to vacate the court's December 10, 1998 order granting plaintiff's motion for summary judgment should have been granted.

Palladino's motion to disqualify plaintiff's counsel should also have been granted. It may be that counsel's adversarial relationship to his client, the plaintiff herein, does not actually prevent him from exercising his professional judgment unaffected by his own financial, business, property, or personal interests (*see*, Code of Professional Responsibility DR 5-101 [a] [22 NYCRR 1200.20 (a)]; DR 5-105 [22 NYCRR 1200.24]) since he does not oppose this action. Of the remaining defendants, plaintiff's son and two daughters and Michael Palladino, only Palladino, who is no longer married to plaintiff's daughter, Teresa Palladino, opposes the action. Nevertheless, it is not only the fact but also the appearance of a conflict of interest

that is forbidden (*see, Greene v Greene*, 47 NY2d 447, 451). "Viewed from the standpoint of a client, as well as that of society, it would be egregious to permit an attorney to act on behalf of the client in an action where the attorney has a direct interest in the subject matter of the suit. * * * [T]he conflict is too substantial, and the possibility of adverse impact upon the client and the adversary system too great, to allow the representation. In short, a lawyer who possesses a financial interest in a lawsuit akin to that of a defendant may not, as a general rule, represent the plaintiff in the same action" (*id.,* at 452).

Accordingly, it would be inappropriate to permit defendant John LaGumina, in this action where he is named as a defendant, to represent plaintiff. Concur—Rosenberger, J. P., Williams, Ellerin and Buckley, JJ.